Dominic V. CATRAMBONE

v.

Robert K. BLOOM and Patrick
A. Philbin.

Civ. A. No. 82–0798.

United States District Court,
E. D. Pennsylvania.

May 24, 1982.

Walter M. Phillips, Jr., Philadelphia, Pa.,
for plaintiff.

Andrew S. Gordon, Deputy Atty. Gen.,
Harrisburg, Pa., for defendants.

MEMORANDUM

BECHTLE, District Judge.

Plaintiff filed this civil action to obtain redress for alleged violation of various civil and constitutional rights, suffered when defendants terminated plaintiff's employment with the Pennsylvania Department of Revenue. Presently before the Court is defendants' motion seeking dismissal or transfer of the case for improper venue or, if venue is proper, for transfer of the case to a more convenient forum pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the Court holds that venue in this district is improper, and will order that the case be transferred to the Middle District of Pennsylvania.

Although the only papers now on file setting forth the facts of the case are plaintiff's complaint and the moving papers, there appears to be no dispute over the pertinent facts in this case. Plaintiff Dominic Catrambone, a citizen of Pennsylvania, resides in Philadelphia, Pennsylvania. Defendant Robert K. Bloom ("Bloom") is Secretary of the Department of Revenue of the Commonwealth of Pennsylvania (the "Department"), and defendant Patrick A. Philbin ("Philbin") is Deputy Secretary for Enforcement in the Department. Both conduct their day-to-day official duties at offices in Harrisburg, Pennsylvania, which is located in the Middle District of Pennsylvania. For several years prior to the fall of

1981, plaintiff was Director of the Financial Investigative Division of the Department, which conducted both civil and criminal investigations of tax evaders, including tax evaders considered to be major organized crime figures. At all relevant times, plaintiff reported directly to defendant Philbin.

In August 1981, plaintiff attended a meeting in Reading, Pennsylvania with Representative Thomas Caltagirone ("Caltagirone"), who is a member of the Pennsylvania legislature, and several members of the state police. Those present discussed the possibility of investigating the civil or criminal tax liability of a person in the Reading area reputed to be a major organized crime figure. In October 1981, plaintiff recommended such an investigation to defendant Philbin, but Philbin rejected the proposal. On several occasions over the next two months, Representative Caltagirone and plaintiff Catrambone discussed the failure of the Department to take up the proposed investigation. On November 23, 1981, defendants summoned plaintiff and expressed their displeasure with plaintiff's discussions with Representative Caltagirone. One month later, on December 23, 1981, defendants, then in Harrisburg, telephoned plaintiff in Philadelphia and notified him that he had been dismissed because of insubordination and a failure to carry out the directives of his superiors.

Plaintiff thereafter filed the present action under 42 U.S.C. § 1983, claiming violations generally of his civil and constitutional rights, and more specifically of his rights to due process of law and freedom of expression. Jurisdiction is predicated upon 28 U.S.C. § 1331, governing general federal question jurisdiction, and 28 U.S.C. § 1343, the federal civil rights jurisdictional statute.

Turning to defendants' motion, the first question is whether the facts above entitle defendants to dismissal or transfer of the case under 28 U.S.C. § 1406(a). Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Thus, the principal question before the Court is whether venue is proper in this district.[1]

In arguing that venue is proper here, plaintiff relies solely on 28 U.S.C. § 1391(b), which provides that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law." Defendants contend, and plaintiff apparently concedes, that defendants Bloom and Philbin reside in the Middle District of Pennsylvania. Thus, venue is properly laid in this district only if this is the district "in which the claim arose."

Determining which of two or more districts arguably related to a lawsuit is the one "in which the claim arose" can be difficult. One approach to the problem was stated some fourteen years ago by Judge John W. Lord, Jr. of this district, who proposed the following test in the context of an antitrust case:

It is submitted that "where the claim arose" should be dependent upon where the contacts weigh most heavily. A "weight of the contacts" test would enable venue to exist in a district where the injury occurred, if significant sales causing substantial injury were made to plaintiffs there by defendants. If some other overt act pursuant to the conspiratorial meetings took place in a district and it was a significant and substantial element of the offense, then venue would lie in that district. Conversely, if one

1. Plaintiff does not appear to dispute that the Middle District of Pennsylvania is a district "in which [the case] could have been brought." Not only would this follow from the conclusion reached here by the Court that the claim arose for purposes of 28 U.S.C. § 1391(b) in the Middle District, but it would also follow from the fact that the Middle District appears to be the district where both defendants reside. *See* 28 U.S.C. § 1391(b). Accordingly, the critical issue before the Court is whether venue is proper in *this* district.

insignificant sale was made in a district . . . venue would not lie there. Similarly, if a meaningless and insignificant meeting of the conspirators took place in a certain district, venue would not exist there either.

*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,* 291 F.Supp. 252, 260–261 (E.D.Pa.1968). Although the usefulness of the test has been questioned, *see* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3806, at 35–36 (1976), as well as its applicability outside the field of antitrust, *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 783 (D.Md.1978), the test has never been rejected in this circuit or this district.

Indeed, this approach was apparently sanctioned by the Supreme Court in its recent decision in *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). In *Leroy,* the Supreme Court considered whether venue was proper in an action brought by a Texas corporation in a federal district court in Texas to enjoin the enforcement of an Idaho law purporting to regulate tender offers to acquire stock in Idaho corporations. Venue in Texas was founded, at least in part, on the ground that the "claim arose" in Texas for § 1391(b) purposes. In reviewing the correctness of this determination, the Supreme Court appeared to determine where the claim arose by examining and weighing the relevant contacts with the alternative forums. Thus, the Supreme Court, in holding that venue lay in Idaho under § 1391(b), noted that the action involved a variety of actions taken in Idaho by Idaho residents in the enactment and enforcement of the takeover statute, and that the bulk of the relevant evidence and witnesses would accordingly be located in that state. The Court also noted that the validity of a state law is usually best determined by judges familiar with that law. The Court's approach is at least similar—if not identical—to the approach suggested by Judge Lord, and thus suggests the continuing validity of Judge Lord's "weight of the contacts" test.

*Leroy* is also important here, however, because it stands for the proposition that, in the ordinary case, the "claim arose" language of § 1391(b) does not accord plaintiff "an unfettered choice among a host of different districts," 443 U.S. at 185, 99 S.Ct. at 2717, but merely permits plaintiff some single, presumably convenient alternative forum for his or her lawsuit in addition to the defendants' home district. Although this latter proposition was not stated in so many words, it is necessarily implicit from the Court's language:

> In our view, therefore, the *broadest* interpretation of the language of § 1391(b) that is even *arguably* acceptable is that in the *unusual* case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that *with approximately equal plausibility*—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)— may be assigned as the locus of the claim. . . .
>
> This case is not, however, unusual.

*Id.* (citation and footnote omitted) (emphasis added). In other words, since a plaintiff will be permitted to choose among alternatives only in the rare case where there are two or more districts having approximately equal contacts with the claim, a plaintiff seeking to lay venue in the district in which the claim arose in the ordinary case is confined to the single district where the weight of the contacts is located.

With these principles in mind, the Court has no difficulty in concluding that venue in this district is improper in the case before it. Plaintiff's claim arises out of his discharge from his employment. His employer is a department of a state government whose offices are located, not in this district, but in the neighboring Middle District of Pennsylvania. Both of the defendants, plaintiff's superiors, work in those offices and presumably reside in the Middle District. All of the face-to-face contact at issue in the case also took place at the

departmental offices in the Middle District. Indeed, the only contact between plaintiff's claim and this district—and the sole basis for plaintiff's assertion that the claim arose in this district—is defendants' telephone call, placed from Harrisburg to plaintiff in Philadelphia, notifying plaintiff of his termination. This trivial connection is wholly insufficient, in quality as well as quantity, to outweigh the claim's contacts with the Middle District stated above. Accordingly, the Court concludes that plaintiff's claim arose, for purposes of § 1391(b), in the Middle District of Pennsylvania, and that venue in this district is improper. Defendants' motion to transfer must therefore be granted, and the case will be transferred to the Middle District.[2]

An appropriate Order will be entered.

---

2. The Court's disposition of defendants' arguments under 28 U.S.C. § 1406(a) obviates the need to consider defendants' alternative arguments under 28 U.S.C. § 1404(b).